UNITED STATES DISTRICT COURT
DISTRICT OF HAWAI'I

| | |
|---|---|
| MATTHAN JAMES SIMONS PATTIOAY,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN T. THOMAS,<br><br>Respondent. | CV. NO. 18-00462 DKW-WRP<br><br>**ORDER (1) DENYING PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS; AND (2) DENYING CERTIFICATE OF APPEALABILITY** |

On January 16, 2019, Petitioner Matthan James Simons Pattioay filed an amended petition under Section 2254 of Title 28 for a writ of habeas corpus by a person in state custody ("the Section 2254 Petition"). The Section 2254 Petition asserts four claims, some exhausted and others not, and thus, is a "mixed" petition. Nonetheless, as explained below, because Pattioay's exhausted claims fail to demonstrate an entitlement to federal habeas relief and his unexhausted claims do not present a colorable claim, the Court DENIES the Section 2254 Petition and declines to award a certificate of appealability.

## BACKGROUND

I. **State Proceedings**

After a jury trial, Pattioay was found guilty of one count of Terroristic Threatening in the First Degree, in violation of Section 707-716(1)(e) of the

Hawaiʻi Revised Statutes (Section 707-716).  He was subsequently sentenced to five years' imprisonment with credit for time served.  Pattioay appealed his judgment of conviction and sentence, raising a single claim: his rights to due process and a fair trial were violated when the trial court refused to instruct the jury as to "knowing" and "negligent" states of mind.  The State of Hawaiʻi Intermediate Court of Appeals (ICA) rejected this claim, concluding that the instruction given to the jury complied with the relevant statutes and was not otherwise deficient.  On September 11, 2018, the Supreme Court of the State of Hawaiʻi rejected Pattioay's application for a writ of certiorari from the ICA's decision.

## II.  This Proceeding

On November 26, 2018, Pattioay initiated this proceeding by filing a petition under Section 2254, asserting four claims for relief ("the Initial Petition").  Dkt. No. 1.  Shortly thereafter, after granting Pattioay leave to proceed *in forma pauperis*, the assigned Magistrate Judge, pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, preliminarily reviewed the Initial Petition and dismissed the same with leave to amend.  Dkt. No. 7.  Specifically, the Magistrate Judge found that, with respect to all of Pattioay's claims, he failed to provide sufficient facts suggesting an entitlement to federal habeas relief.  In addition, with respect to the third and fourth claims, the Magistrate Judge found that those claims were incomprehensible and, to the extent

2

they could be understood, they had not been raised in Pattioay's direct appeal, and thus, were unexhausted.

On January 16, 2019, Pattioay filed the instant Section 2254 Petition. Dkt. No. 8.[1] Liberally construing the Section 2254 Petition, Pattioay raises the following four claims: (1) the state trial court erred in failing to instruct the jury on the "knowing" and "negligent" states of mind, violating his right to a fair trial (Claim One); (2) the trial court failed to instruct the jury on "all four states of mind," thereby reducing the state's burden of proof (Claim Two); (3) the trial court overruled an unidentified matter related to self-defense (Claim Three); and (4) the trial court overruled an unidentified matter related to the use of the victim, Kerry Atwood, as a witness (Claim Four).

After the Magistrate Judge ordered Respondent, Warden Todd Thomas, to file an answer, Respondent did so on March 27, 2019. Dkt. No. 17. On May 22, 2019, Pattioay filed a reply. Dkt. No. 21.[2]

---

[1] In citing to the Section 2254 Petition, the Court cites to the page numbers assigned by CM/ECF at the top of each page. This is because the numbering of the Section 2254 Petition itself begins, on the first page, with "Page 2." *See* Dkt. No. 8 at 1.

[2] On June 3, 2019, Pattioay re-sent his reply under the cover of a letter to the newly assigned Magistrate Judge. Dkt. No. 22. To the extent, in his letter, Pattioay is concerned that his reply may not be considered because it contained, in the case caption, the initials of the prior Magistrate Judge, he need not be. The Court has considered the reply in making its findings and rulings herein.

## STANDARD OF REVIEW

Under Section 2254, a court shall entertain a petition for writ of habeas corpus from a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). When a claim is "adjudicated on the merits" in a state court proceeding, the state adjudication may not be overturned unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d).

In addition, a petition for writ of habeas corpus by a person in state custody may not be granted unless the petitioner exhausts the remedies available in the state courts. *Id*. § 2254(b)(1)(A). However, notwithstanding the failure to exhaust remedies available in state courts, a court may deny a petition for writ of habeas corpus on the merits. *Id*. § 2254(b)(2).

## DISCUSSION

### I.     Exhaustion

Here, the record of Pattioay's direct appeal reflects that he raised one substantive issue before the ICA. As the ICA explained, that issue concerned whether the trial court erred in failing to instruct the jury on the knowing and

negligent states of mind. Dkt. No. 17-3 at 2. While that issue may encompass Claims One and Two in the Section 2254 Petition, it certainly does not encompass Claims Three and Four.[3] As a result, the Section 2254 Petition is a "mixed" petition. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982) (describing a petition for a writ of habeas corpus that contains exhausted and unexhausted claims as a "mixed" petition). While Respondent argues that Claims Three and Four are unexhausted, neither party addresses the fact that the Section 2254 Petition is a mixed petition.

A federal habeas petition containing exhausted and unexhausted claims is subject to dismissal. *Rose*, 455 U.S. at 522. That being said, before dismissing a mixed petition, there are various avenues a court can take. First, a court can provide the petitioner an opportunity to amend his petition to delete unexhausted claims and proceed only with exhausted claims. *Henderson v. Johnson*, 710 F.3d 872, 873 (9th Cir. 2013).[4] Second, a court, if requested by the petitioner, can determine whether the petition should be stayed so that the petitioner can present his unexhausted claims to a state court in the first instance. *Rhines v. Weber*, 544 U.S. 269, 277-278 (2005);

---

[3]In the Section 2254 Petition, Pattioay checks the box indicating that he believes Claims Three and Four were raised on direct appeal and, with respect to Claim Four, in a state habeas proceeding. Dkt. No. 8 at 9-10. The record does not reflect that Pattioay filed a state habeas proceeding, however. In addition, the record is clear that Pattioay did not raise either Claim Three or Four during his direct appeal.

[4]The Court notes that Pattioay has already been provided an opportunity to amend his petition in this case. Specifically, the Magistrate Judge explained to Pattioay that, in the Initial Petition, the third and fourth claims appeared unexhausted and were subject to dismissal. Dkt. No. 7 at 6. Pattioay's amended petition–the Section 2254 Petition–contains the same third and fourth claims (Claims Three and Four), even though they remain unexhausted.

5

*Henderson*, 710 F.3d at 874.[5][6] Third, if a petitioner has been provided with an opportunity to amend his petition and the court determines that a stay is not appropriate, a court must dismiss the petition in its entirety without considering exhausted claims. *Wooten v. Kirkland*, 540 F.3d 1019, 1026 (9th Cir. 2008). Fourth, a court may consider a mixed petition on the merits and deny, but not grant, the same. 28 U.S.C. § 2254(b)(2); *Jackson v. Roe*, 425 F.3d 654, 658 n.5 (9th Cir. 2005).

In this case, the Court takes the latter approach and considers the mixed petition on the merits.

## II. Merits

### A. Claims One and Two

The Court begins with Pattioay's exhausted claims, Claims One and Two. Claims One and Two both involve a jury instruction concerning the state of mind for the charged offense. In Claim One, Pattioay asserts that the trial court erred in failing to include the states of mind of "knowing" and "negligent" in the pertinent jury instruction. In Claim Two, Pattioay makes a similar argument, asserting that the pertinent jury instruction did not include four states of mind. Pattioay asserts

---

[5]In this case, Pattioay has not requested a stay, however liberally his filings are construed.
[6]In the Ninth Circuit, a petitioner is also entitled, under certain circumstances, to a stay of a fully exhausted petition. *King v. Ryan*, 564 F.3d 1133, 1139 (9th Cir. 2009). The first step a petitioner must take to be entitled to such a stay is amending his petition to delete any unexhausted claims. *Id*. Here, in amending the Initial Petition, Pattioay did not delete his unexhausted claims, even though the Magistrate Judge explained to him that they appeared unexhausted. As such, a stay for a fully exhausted petition is not applicable here.

that this reduced the state's burden of proof by precluding the jury from considering whether he had a "knowing" or "negligent" state of mind.

The ICA addressed these arguments as follows:

> Contrary to Pattioay's assertion, we find nothing in the [trial court's] instructions, including those outlined above, suggesting to the jurors that they 'did not need to spend any time considering whether he really had … either an intentional or reckless state of mind[.]' Nor does Pattioay cite any case law or other authority indicating that the omission of instructions defining inapplicable states of mind renders the instructions 'prejudicially insufficient, erroneous, inconsistent, or misleading' or lessens the State's burden of proof as to the culpable states of mind, and we find none. Indeed, this court has rejected similar arguments before.

Dkt. No. 17-3 at 4 (citation omitted).

Put simply, contrary to Pattioay's assertions, the trial court did not err in instructing the jury. As the ICA explained, the charged offense implicated "intent" or "reckless" states of mind.[7] The charged offense did not implicate "knowing" or "negligent" states of mind. Therefore, Pattioay's request, for those latter states of mind to be included in the jury instruction, was irrelevant. This is why the ICA concluded that the trial court did not err, and the state's burden of proof was not reduced. This Court agrees. More importantly, however, with respect to the

---

[7] As mentioned, Pattioay was charged with terroristic threatening in the first degree. In relevant part, a person commits terroristic threatening in the first degree if the person commits terroristic threatening with the use of a dangerous instrument or a simulated firearm. Haw. Rev. Stat. § 707-716(1)(e). In relevant part, "terroristic threatening" is defined as "threaten[ing], by word or conduct, to cause bodily injury to another person or serious damage or harm to property … of another or to commit a felony … [w]ith the *intent* to terrorize, or in *reckless* disregard of the risk of terrorizing, another person…." *Id*. § 707-715(1) (emphasis added).

7

habeas relief Pattioay seeks, he points to no federal law, let alone clearly established federal law, that the ICA unreasonably applied or to which the ICA's decision was contrary.[8] *See* 28 U.S.C. 2254(d)(1). Although Pattioay asserts that he was denied a "fair trial" and the state's burden of proof was reduced, he cites no federal law for these propositions.[9][10]

As a result, Claims One and Two are denied.

## B. <u>Claims Three and Four</u>

As discussed, Claims Three and Four are unexhausted. When reviewing an unexhausted claim on the merits, a court may deny such a claim "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

As an initial matter, the Court observes, consistent with the Magistrate Judge, that Claims Three and Four, as presented in Pattioay's filings, are largely unintelligible. As with all of Pattioay's assertions, though, the Court has liberally construed Claims Three and Four in an attempt to discern the claim or claims Pattioay is raising.

---

[8] The Court notes that the ICA did not *apply* any federal law. The ICA's decision was predicated solely upon state law. *See generally* Dkt. No. 17-3.
[9] The Section 2254 Petition does not cite any law in support of Pattioay's claims. In his reply brief, Pattioay cites only state law with respect to Claims One and Two.
[10] Nor can the Court comprehend how a fair trial is deprived or a state's burden of proof reduced by instructions that discuss only relevant states of mind and inform the jury that the state must prove all material elements beyond a reasonable doubt.

With that in mind, in Claim Three, Pattioay raises an issue concerning self-defense. Pattioay asserts that he was attacked and victimized by Kerry Atwood in the following manner: "he attacked I Matthan Pattioay whial [*sic*] interaction between both Kerry Atwood and Matthan Pattioay of conversation. Which lead [*sic*] to Matthan Pattioay needing to self-defence [*sic*] for him-self with a stick in hand." Dkt. No. 8 at 8. Pattioay asserts that he did not make bodily contact with Atwood, and there was only a verbal exchange between them. Pattioay further asserts that the trial court overruled an unidentified issue, which, presumably, relates to the matter of self-defense. In addressing a question concerning the exhaustion of Claim Three, Pattioay asserts that, at the beginning of his trial, he asked for "the right of self-defence [*sic*] be granted[,]" which the trial court denied. *Id*. at 9. In his reply brief, Pattioay also references a "self-defense instruction" and appears to cite case law for when such an instruction is appropriate.

Liberally construing all of these assertions, arguably, Pattioay may be asserting that (1) the evidence was insufficient to find him guilty because he engaged in self-defense, (2) the trial court should have acquitted him or dismissed the case on the ground of self-defense, and/or (3) he was entitled to a jury instruction on self-defense.

As for the latter, the record reflects that the jury *was* instructed on the matter of self-defense. *See* 2/28/17 Transcript of Trial at 14:24-17:9, Dkt. No. 17-9. As

9

for the remaining possible arguments, they simply ask this Court to re-weigh the evidence in Pattioay's favor. This is because, as Respondent explains, Kerry Atwood provided a very different account of events. *See* Dkt. No. 17 at 2-3.[11] Because Pattioay testified at his trial, both his version and Atwood's version of events were presented to the jury. Given that the jury found him guilty of the charged offense, and thus, did not find him not guilty on account of self-defense, the jury evidently believed Atwood's version. As a result, in order for Pattioay to have any hope of relief with respect to any possible claim he may be asserting with respect to self-defense, this Court would need to reject Atwood's testimony and credit Pattioay's. This the Court cannot do on habeas review. *See Jackson v.*

---

[11]Among other things, Atwood testified that he first encountered Pattioay when Pattioay asked him for a dollar outside of a store he was visiting with his son. 2/27/17 Transcript of Trial at 36:14-39:13, Dkt. No. 17-8. With his hand, Atwood gestured to Pattioay "[n]o more." *Id*. at 39:18-25. Atwood continued into the store, completed his shopping, and walked toward his motor vehicle. *Id*. at 40:13-17, 41:19-42:14. While Atwood was opening the passenger door of his vehicle for his son, he heard footsteps "like someone running up to me." *Id*. at 42:18-25. Atwood turned and Pattioay "started throwing some punches" at him. *Id*. at 43:1-3. Atwood dropped the items he had purchased from the store and put up his hands to block Pattioay's punches. *Id*. at 43:7-10. Pattioay was swinging, with closed fists, at Atwood's head, but none of the punches connected. *Id*. at 43:11-18. Pattioay probably swung four or five times. *Id*. at 43:19-21. Atwood "backed [Pattioay] out" toward the middle of the store's parking lot, and, at this point, Pattioay stopped his attack and said, "I got something for you." *Id*. at 44:1-18. Pattioay then ran toward a white pickup truck, pulled out what appeared to be a pick axe handle, and ran "full force" at Atwood. *Id*. at 44:19-21. Atwood ran away from Pattioay and was chased around Atwood's vehicle three or four times, while Pattioay swung the pick axe handle at Atwood's head. *Id*. at 47:7:14. After running around Atwood's vehicle, Pattioay hit the vehicle on the driver's side. *Id*. at 48:5-7. Atwood was able to get a little distance between himself and Pattioay, and he ran into the store. *Id*. at 48:7-8. Pattioay did not follow Atwood into the store, but, when Atwood came out of the store, Pattioay chased Atwood back into the store while still holding the pick axe handle. *Id*. at 48:15-49:9. Atwood was chased back into the store twice. *Id*. at 49:10-12. Atwood asked someone in the store to call 911, and the police arrived "[p]retty quick" thereafter. *Id*. at 49:24-50:12.

*Virginia*, 443 U.S. 307, 323-324 (1979) (holding that, when challenging the adequacy of evidence to support a conviction, a petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) ("The reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict.").[12]

Put another way, Pattioay cannot argue that the jury failed to consider and weigh his testimony. He also cannot argue that, if credited, Atwood's testimony did not provide proof of guilt beyond a reasonable doubt. Instead, he simply asks this Court to do that which the jury declined to do. Because that is not the basis for a claim on federal habeas review, Claim Three is not colorable under any construction.

---

[12]The Court notes that because Pattioay does not urge reliance on extrinsic evidence or evidence presented for the first time in federal court, Section 2254(e)(1) does not apply. *See Kesser v. Cambra*, 465 F.3d 351, 358 n.1 (9th Cir. 2006) (explaining that Second 2254(e)(1) concerns extrinsic evidence, while Section 2254(d)(2) concerns "situations where petitioner challenges the state court's findings based entirely on the state record.") (quotation and citation omitted).

The plain deficiency with Claim Three is equally plain in Claim Four. As presented in the Section 2254 Petition, Claim Four is entirely incomprehensible.[13] In his reply brief, Pattioay, arguably, provides a little more explanation of the claim. More specifically, Pattioay asserts that: "There's no back-up. And the State–that's true. The testimony of single witness if believed. You cannot believe Mr Atwood." Dkt. No. 21 at 3. Pattioay then, arguably, challenges the trial court's finding that there was sufficient evidence for the case to go to a jury. *See id.*

In this light, Claim Four appears to be a mere extension of Claim Three. In Claim Three, Pattioay arguably asserts that he was entitled to a not guilty verdict or a dismissal of the case due to self-defense. In Claim Four, Pattioay arguably asserts that the state's evidence was insufficient to support a finding of guilt because it was based on the testimony of a single witness. In light of the conflicting versions of events to which Pattioay and Atwood testified, these arguments are merely different sides of the same coin, however. They both require, as Pattioay puts it, for you to not believe Atwood. As explained, given that the jury *did* believe Atwood, this Court cannot revisit that decision.[14]

---

[13]The Section 2254 Petition presents Claim Four as follows: "Kerry Atwood was used as a witness and not the accuser or complaintive or Plaintiff. That acknowledged by Public Defender Mr. Sat Freeman, to dismiss State of Hawaii reason Plaintiff Prosecution exame [*sic*] claim, over ruled by [the trial court] of Prosecutor objection reason of pass prior incarceration term history." Dkt. No. 8 at 10.

[14]The Court notes that the result–not revisiting the jury's decision–would have been no different had Pattioay actually brought Claims Three and Four as part of his direct appeal. *See State v. Bogdanoff*, 585 P.2d 602, 606 (Haw. 1978) ("This Court has previously stated that the jury is the

Moreover, to the extent Pattioay may argue that a "single witness" is insufficient evidence of his guilt, he is wrong. *See Bruce v. Terhune*, 376 F.3d 950, 957-958 (9th Cir. 2004) (concluding that a single witness is sufficient to uphold a conviction, even when the witness' account is disputed by the defendant).

As a result, to the extent a claim can be construed from Claim Four, it is not colorable and, thus, is denied on the merits.

### III. Certificate of Appealability

In denying the Section 2254 Petition, the Court must also address whether Pattioay is entitled to a Certificate of Appealability ("COA"). *See* R. 11(a), Rules Governing Section 2254 Cases. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met only when the applicant shows that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted). In light of the findings herein, the Court concludes that reasonable jurists would not debate the resolution of the Section 2254 Petition. Accordingly, the Court DENIES the issuance of a COA.

---

sole judge of the credibility of witnesses. This is the rule which applies when a party seeks review of a jury's apparent determinations as to which witnesses are to be believed. The appellate court will not interfere with a jury's findings as to the credibility of witnesses.").

# CONCLUSION

For the foregoing reasons, the Court DENIES the Section 2254 Petition, Dkt. No. 8. In addition, the Court DENIES a COA.

The Clerk is directed to enter Judgment in favor of Respondent, Warden T. Thomas, and then close Case No. 18-cv-462 DKW-WRP.

IT IS SO ORDERED.

Dated: June 21, 2019 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Pattioay v. Warden T. Thomas*; CV. NO. 18-00462 DKW-WRP; **ORDER (1) DENYING PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS; AND (2) DENYING CERTIFICATE OF APPEALABILITY**